LEVI PARTLOW v. ROBERT M. SWIGART AND CHARLES
T. ANDRUS.

*Fraudulent conveyances—Evidence—Bill of sale—Charge to jury.*

1. The absence of any showing of the amount due on a writ of attachment, under which a sheriff claimed to hold property replevied from him by a vendee of the attachment debtor, is immaterial, where the case is submitted to the jury upon the question whether or not the transfer was fraudulent as against creditors, and the jury find that it was not so fraudulent.

2. In the absence of any evidence tending to show that the bill of sale, under which the plaintiff in replevin claimed the property, was taken as security, and not as an absolute transfer of the property, in payment of a debt due the vendee, as claimed by the plaintiff, a request to charge based upon that theory was properly refused.

3. The only question to be submitted to the jury was whether or not the transfer to the plaintiff was fraudulent as against creditors, and this was fairly submitted, and the law of the case correctly stated. See opinion, page 64.

4. The exclusion of two orders for goods given by plaintiff's vendor, one three days before and one on the day the bill of sale was executed, was harmless error, if error at all, no attempt being made to connect the plaintiff with the giving of such orders, or to show that he knew of their being made, with fraudulent intent on the part of the vendor, and, so knowing, participated in the fraud.

Error to Clinton. (Daboll, J.) Argued January 14, 1892. Decided January 22, 1892.

Replevin. Defendants bring error. Affirmed. The facts are stated in the opinion.

*McPeek & Clarke* (*Norton & Brunson,* of counsel), for appellants.

*L. W. Hill* and *Spaulding & Walbridge* (*Davis & Nichols,* of counsel), for plaintiff.

MORSE, C. J. The plaintiff brought this action in replevin for a stock of goods, which he claimed to have bought in good faith of his brother, Almond Partlow, who at the date of the transfer, May 6, 1890, was indebted to him directly in about the sum of $1,200, and also in the sum of about $1,800, on account of notes of which Almond was maker and plaintiff indorser, which plaintiff was obliged to pay.

The defendants claimed the property by virtue of writs of attachments, Swigart being sheriff, and Andrus a deputy-sheriff, of Clinton county. It does not satisfactorily appear from the record that the writs of attachment were introduced in evidence, or conceded to be valid upon the trial; but, as the instructions of the circuit judge assumed their validity, we are disposed to treat the case as if such fact was established upon the trial. There is no showing in the record as to the amount claimed under these attachments, but as the case was submitted to the jury upon the question whether or not the transfer was a fraudulent one as against creditors, and the jury found that it was not fraudulent, this is not material.

It is claimed by the defendants that the case should have been submitted to the jury upon the proposition that, if the bill of sale of goods was taken as a security instead of an absolute transfer, the defendants were entitled to a judgment for the balance of the value of the goods, after deducting the indebtedness of Almond Partlow to plaintiff. It is sufficient to say, in answer to this claim, that there was no evidence tending to show that the bill of sale was taken as security. In the cross-examination of plaintiff an attempt was made to play upon the word "security," but it is plainly evident that whenever this word was used by the plaintiff, either upon his cross-examination or in conversations that he had

with others, when he spoke of taking the goods to "secure his debt," he used it, as it is often used, in the sense of payment. There is not a *scintilla* of competent evidence in the record tending to show that plaintiff took the goods under his bill of sale with any defeasance, written or oral, to his brother, or with any understanding that his brother should have any further interest in them, contingent or otherwise. And the jury were plainly enough directed that the plaintiff could not recover, except as the owner of the goods, by a good faith purchase of them in payment of a just debt or liability of his brother to him. The case went to the jury upon the proposition that, if the plaintiff took these goods in payment of an honest debt and with no fraudulent intent, and was the owner of them, he could recover; otherwise the verdict of the jury must be for the defendants. The jury were told that if this transfer of the goods was made upon the part of Almond Partlow to defraud his creditors, and that the plaintiff participated in such fraud, and had knowledge that such was the intent of Almond, their verdict must be for the defendants. There was no room anywhere in the case for the claim that this bill of sale was taken as a security only, and was not an absolute sale, and that the defendants were entitled to the balance of the goods after the debt to plaintiff was paid; and the court did not err in refusing to instruct the jury, as requested by the defendants, as follows:

"There is some evidence tending to show that the so-called bill of sale given by Almond to Levi was not in fact a bill of sale, but was intended simply to secure whatever indebtedness there may have been owing the plaintiff by his brother Almond, and that whatever remained over after such claim had been satisfied was to be returned to Almond. If you should so find, then your verdict will be for the defendants for the value of the

property replevined, and you will also find the amount of Levi Partlow's lien on such property."

The only question to be submitted to the jury was whether or not the transfer to plaintiff was fraudulent as against creditors, and this was fairly submitted, and the law of the case correctly stated. The court charged the jury as follows:

"Now, if you should find that the debt owed, if any, from Almond Partlow to Levi Partlow was very much less than the amount, or less in amount than the amount, of the property, then that is a fact that, if you shall find it largely exceeded, would be an evidence of fraud; because if, as claimed in this case, this was a sale, then a sale very largely in excess of the amount due would be a badge of fraud; and this matter you should take into account in determining the question as to the good faith of the transaction; and, if you should find a less amount than the whole amount of the claim by the plaintiff in this case to have been actually due, and the goods to have exceeded it, then, if it was with the intent to hinder, delay, or defraud the other creditors as to the balance of the property between the amount necessary to pay what was due and the amount actually turned over, there would be fraud there, because, while it would be to pay an honest debt up to the amount that was due, you may find an intent to defraud as to the balance of the property."

And further said in closing:

"Your verdict in this case, gentlemen, will be simply for the plaintiff or defendants, as you find the facts to be. If you find the evidence establishes fraud, as I have stated, and this is not an honest indebtedness, or was an honest debt to some extent, and the goods very largely exceeded it, and there was intent to defraud as to the balance, then your verdict would be for the defendants. On the other hand, if you find, as I have indicated here, that it was an honest sale and an honest indebtedness, then your verdict would be for the plaintiff, because he would be entitled to hold the goods under the bill of sale."

It is contended that the circuit judge, in one or two

portions of his charge, used language that gave the jury to understand that the plaintiff would be entitled to a verdict even if they found that the bill of sale was not an absolute conveyance, but was taken simply as security. It is true that in one place he said to the jury that the defendants could not recover unless the jury found that—

"The bill of sale was not actually executed and delivered to Levi Partlow for the purpose of securing or paying honest and just indebtedness from Almond to Levi."

But we do not think the jury could have been misled by this expression. The issue was put so clearly to the jury in the whole charge that we are satisfied that they must have understood that they could not render a verdict for plaintiff, unless they found that he took the bill of sale as an absolute conveyance, and that the value of the goods did not exceed, to any considerable amount, the debt justly due to plaintiff from his brother; and the court evidently used the word "securing" in the same sense as "paying."

The bill of sale was executed on the 6th day of May, 1890, and plaintiff immediately took possession of the goods, employing a clerk by the name of Pennington, and no other person, to carry on the business. The defendants on the trial offered two orders for goods signed by Almond Partlow, one dated the 3d and one the 6th of May, 1890. These orders were not connected in any way with plaintiff, but as it was shown that plaintiff had talked with his brother, and his brother had agreed to sell the goods to him before these orders were made, defendants claimed that they were admissible to show an intent upon the part of Almond to defraud his creditors. It appears that this agreement to sell the goods to plaintiff was about the middle of April, 1890. The latter part of the month the plaintiff went north, to

90 MICH.—5.

Newaygo, and did not return until May 5. He left word with his attorney, Loyal W. Hill, of Eagle, to draw up the bill of sale. Hill wrote him, May 3, that it was drawn up, and he came home. He got to Eagle about noon of the 6th of May, and took possession of the goods. While these orders might have some tendency to show a disposition on the part of Almond to defraud his creditors, and be therefore admissible, yet they could have had no bearing against the good faith of plaintiff, unless it was shown in some way that he knew of their being made, with fraudulent intent on the part of his brother, and, so knowing, participated in the fraud. If they had been admitted, and not brought home to the knowledge and participation of the plaintiff, it would have been the duty of the court to instruct the jury that the fact of their being made by Almond could not be used to show bad faith on the part of the plaintiff. No offer was made to connect plaintiff with these orders for goods. The defendants' counsel offered them in evidence—

"For the purpose of showing that Almond Partlow ordered goods after he had agreed with his brother Levi, and they had an agreement between them, that he was to sell him this stock of goods, and after he knew himself, and his brother Levi knew, that he was insolvent."

Their exclusion was harmless error, if error at all.

The judgment is affirmed, with costs.

McGRATH, LONG, and MONTGOMERY, JJ., concurred. GRANT, J., did not sit.